IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROSE M. SMITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14-cv-1078-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Rose M. Smith, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Smith applied for benefits in November, 2010, alleging disability beginning on January 12, 2010. (Tr. 14). After holding an evidentiary hearing, ALJ William L. Hafer denied the application for benefits in a decision dated July 24, 2013. (Tr. 14-28). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).  See, Doc. 12.

Page **1** of **17**

Plaintiff raises the following points:

1. The ALJ erred in failing to include any mental limitations in plaintiff's RFC or in the hypothetical question posed to the VE.

2. The ALJ erroneously rejected all medical evidence dated after plaintiff's date last insured.

3. The ALJ failed to include limitations in plaintiff's ability to use her hands.

4. The ALJ failed to consider plaintiff's impairments in combination.

5. The ALJ failed to properly consider all opinions regarding plaintiff's physical limitations.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

In a DIB case, a claimant must establish that she was disabled as of her date last insured. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). It is

not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Smith was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

ALJ Hafer followed the five-step analytical framework described above. He determined that Ms. Smith had not been engaged in substantial gainful activity since the date of her application. She was last insured for DIB as of March 31, 2011.

The ALJ found that plaintiff had severe impairments of rheumatoid arthritis, degenerative disc disease, history of rotator cuff tears, COPD, obesity, degenerative joint disease of the right knee, and anxiety. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Smith had the residual functional capacity (RFC) to perform work at the light exertional level, with a number of physical limitations but no mental limitations. He found that she could occasionally reach overhead bilaterally, but found no limitations in the use of her hands. Based upon the testimony of a vocational expert, the ALJ found that plaintiff was able to do her past work as a deli clerk or fast food worker.

### **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period. Many of the medical records postdate plaintiff's date last insured, March 31, 2011.

### 1. Prior Denial

Ms. Smith applied for DIB in January 2008, alleging that she became disabled on April 1, 2006. An ALJ denied that application in a written decision dated January 11, 2010. (Tr. 111-123).

### 2. Agency forms

Plaintiff was born in 1966 and was 44 years old on the alleged onset date. (Tr. 224). In December, 2010, she was 4'11" tall and weighed 170 pounds. (Tr. 228). She said that she had stopped working on January 31, 2006, because of her condition. She had an eighth grade education. (Tr. 228-229).

### 3. Evidentiary Hearing

Ms. Smith was represented by an attorney at the evidentiary hearing on May 2, 2013. (Tr. 41).

Plaintiff testified that she had worked as a deli clerk in a grocery store and as a cook in a Quizno's sandwich shop. (Tr. 46).

Plaintiff lived with her husband. She did some household chores and some cooking, but some days she could not "motivate," so her husband did everything. (Tr. 56).

Ms. Smith testified that her hands had gotten worse over the past couple of

years. In March 2011, she was able to button clothing. (Tr. 48).

She had not been treated by a mental health professional. Such treatment had not been recommended by anyone. She had been taking Xanax, but stopped because it made her angry and gave her nightmares. Her former family doctor prescribed it. She took it because she was very emotional and did not associate with people. She had panic attacks about 3 or 4 times a month. Sometimes she woke up moody and cried all day. (Tr. 51-54).

A vocational expert also testified. The ALJ asked him to assume a person who was able to do light work, limited to occasional stooping, kneeling, crouching, crawling and climbing stairs, with no climbing of ladders, ropes and scaffolds, no work at unprotected heights or around dangerous machinery, no constant exposure to dust, fumes, gases or extreme temperatures, and limited to only occasional overhead reaching with both arms. The VE testified that this person could do plaintiff's past work as a deli clerk and fast food worker. However, if she were also limited to only occasional handling and fingering, all unskilled jobs at the light and sedentary levels would be precluded. (Tr. 63-64).

4. **Medical Records**

Ms. Smith was treated by Dr. Iqbal Akhter, an arthritis specialist. In November 2009, she complained of pain in her neck, low back and the joints of her hands. He diagnosed rheumatoid arthritis. (Tr. 336). In March 2010, she had been taking Plaquenil and her hands were doing "fairly well." However, she complained of significant pain in her right shoulder. (Tr. 334). In August 2010, the PIP and MCP joints in her hands showed tenderness, especially on the right,

and she had pain making a fist.  Dr. Akhter also noted multiple soft tissue tender points.  (Tr. 330).  In November 2010, her PIPs, MCPs and wrists showed mild swelling and tenderness, with pain making a fist.  (Tr. 328).  In February 2011, Dr. Akhter noted that she had rheumatoid arthritis and degenerative joint disease. The PIPs, MCPs and wrists showed no swelling and mild tenderness, with pain making a fist.  Her right knee was tender to palpation with no redness or heat in the joint.  He prescribed Tramadol.  He noted that she had no history of depression, but was taking Zoloft for anxiety, and he instructed her to check with the pharmacy to be sure there was no adverse drug interaction.  (Tr. 503).

Plaintiff had arthroscopic surgery to repair a right rotator cuff tear in August 2010.  In October 2010, she was "doing very well" with good flexion and abduction. She had a little bit of discomfort, which the doctor thought would resolve.  (Tr. 527-528).  In February 2011, she was still having discomfort and had lost some motion. The doctor noted that she had not been doing her exercises at home.  He indicated he would continue her on a home exercise program as she could not afford to go to physical therapy.  She also complained of pain in her neck and hips. (Tr. 529).

     5.     **Consultative Psychological Exam**

At the request of the agency, Fred Klug, Ph.D., performed a consultative psychological exam on February 14, 2011.  He noted that plaintiff had a history of alcohol and drug abuse, but had stopped drinking in 2004 and had not used marijuana in 4 years.  She had an eighth grade education and had been in special education classes.  She was taking psychotropic medication.  On exam, Dr. Klug

found that her immediate and short term memory were impaired. Her attention span was adequate. New learning ability was good. Long term memory was intact. Reasoning, abstract thinking and judgment were poor, but insight was fair. Her overall intellectual functioning was borderline. Dr. Klug diagnosed dysthymic disorder-late onset, panic disorder with agoraphobia, generalized anxiety disorder and history of alcohol dependence.[2] (Tr. 493-496).

### 6. State Agency Consultant's RFC Assessment

On March 1, 2011, Howard Tin, Psy.D., assessed plaintiff's mental RFC. He used an agency form (Form SSA-4734-F4-SUP) that is commonly used for this purpose in social security cases. (Tr. 518-521). This form is referred to as the Mental Residual Functional Capacity Assessment. Section I of the form consists of a list of mental activities. The consultant is asked to set forth his "summary conclusions" by checking a box to rate the severity of limitation as to each activity. Dr. Tin checked the box for "moderately limited" for the following activities:

- Ability to understand and remember detailed instructions;

- Ability to carry out detailed instructions;

- Ability to maintain attention and concentration for extended periods;

- Ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

In Section III of the form, the consultant is asked to explain his "summary

---

[2] "Persistent depressive disorder, also called dysthymia (dis-THIE-me-uh), is a continuous long-term (chronic) form of depression." http://www.mayoclinic.org/diseases-conditions/persistent-depressive -disorder/home/ovc-20166590, visited on December 22, 2015. "Late onset" indicates that the disorder was developed after the age of 21. http://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/diagnosis-treatment/diagnosis/dxc-20166616, visited on December 22, 2015.

conclusions in narrative form. Include any information which clarifies limitation or function." Under the heading "Understanding and Memory," Dr. Tin wrote that plaintiff "can remember locations or work-like procedures and can also understand and remember short simple instructions" but noted that she had "difficulty remembering detailed instructions." Under the heading "Sustained Concentration and Persistence," Dr. Tin noted that Dr. Klug's exam had shown that her memory skills "were less than adequate," but he did not explain how Dr. Klug's findings dovetailed with his own conclusions about her memory skills. He also concluded that plaintiff "has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." He made further findings under the headings "Social Interaction" and "Adaption," but did not explain his earlier notation that plaintiff was moderately limited in ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

### Analysis

Plaintiff correctly argues that the ALJ erred in failing to adequately consider all of the limitations found by Dr. Tin in the Mental RFC Assessment Form.

The ALJ discussed Dr. Tin's opinion at Tr. 27. He noted that Dr. Tin found that plaintiff had moderate difficulties in maintaining concentration, but did not mention the other moderate limitations indicated by Dr. Tin. He stated that Dr. Tin's opinion was consistent with the findings of Dr. Klug on consultative exam. He said that he gave Dr. Tin's opinion "weight." He did not state that he disagreed with any part of Dr. Tin's report.

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  SSR 96-6p, at *2.  The ALJ is required by 20 C.F.R. §§ 404.1527(f) and 416.927(f) to consider the state agency consultant's findings of fact about the nature and severity of the claimant's impairment as opinions of non-examining physicians; while the ALJ is not bound by the opinion, he may not ignore it either, but must consider it and explain the weight given to the opinion in his decision.  See, *McKinzey v. Astrue*, 641 F.3d 884, 891(7th Cir. 2011).  Here, the ALJ gave the state agency consultant's opinion "weight" and did not state that he rejected any part of his opinion.

Although he apparently credited Dr. Tin's opinion, the ALJ did not include any mental limitations at all in his RFC assessment or in his hypothetical question to the VE, and did not explain the omission.  Plaintiff argues, correctly, that this was error.  The hypothetical question posed to the VE must include all limitations that the ALJ finds credible.  "We have stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity, and vocational experts must consider 'deficiencies of concentration, persistence, and pace.'"  *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011), citing *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

The Commissioner first argues that the failure to include a limitation in maintaining concentration, persistence or pace was harmless because the ALJ found that plaintiff was capable of doing her past work, and that work is unskilled with a SVP of 2.  However, the Seventh Circuit has repeatedly rejected the

argument that a limitation to unskilled work or simple, one to two steps tasks adequately accounts for a limitation in maintaining concentration, persistence or pace.  *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014); *O'Connor-Spinner*, 627 F.3d at 620, and cases cited therein.

The Commissioner also argues that the ALJ was not required to include the moderate limitations indicated by Dr. Tin's checkmarks in Section I of the MRFC form.  She argues that the ALJ was entitled to ignore these worksheet observations in favor of the "narrative RFC" set out in Section III of the form.

In making this argument, the Commissioner relies on *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015).  In *Varga*, the state agency consultant checked the box to indicate that the plaintiff had moderate limitations in concentration, persistence or pace in Section I of the MRFC form.  In Section III, he wrote "see EWS," referring to an electronic work sheet which was lost by the agency.  The Commissioner hones in on this aspect of the opinion, selectively citing to part of the final paragraph of the opinion.  Her brief suggests that *Varga* holds that an ALJ must account for the Section I findings only where "no narrative translation exists."  See, Doc. 27, pp. 4-5.

The Commissioner's reading of *Varga* is erroneously narrow.  The full final paragraph of the opinion reads as follows:

> Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet

> observations. See *Johansen*, 314 F.3d at 286. But where, as here, no narrative translation exists—because of error on the part of the doctor or the agency—an ALJ's hypothetical question to the VE must take into account any moderate difficulties in mental functioning found in Section I of the MRFCA form, including those related to concentration, persistence, or pace.

*Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015).

The Commissioner's argument here glosses over the Seventh Circuit's clear statement that worksheet observations constitute medical evidence that cannot simply be ignored. Further, she pays insufficient attention to the Seventh Circuit's admonition that the ALJ can rely on the narrative statement in Part III only where it "adequately encapsulates and translates" the worksheet observations. She argues that Dr. Tin "translated" his worksheet finding into a narrative assessment by stating that plaintiff is limited to simple tasks. Again, this position has repeatedly been rejected by the Seventh Circuit. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014); *O'Connor-Spinner*, 627 F.3d at 620, and cases cited therein.

The Commissioner argued in *Varga*, as she does here, that Section I of the form is merely a worksheet. She cited *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010), in *Varga*, and she relies on that case here as well. However, the Seventh Circuit declined to follow *Smith*: "This circuit has declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE." *Varga*, 794 F.3d at 816.

*Varga* cites *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014). In that case, the

Seventh Circuit rejected the Commissioner's position that the ALJ may ignore Part I of the MRFCA form and consider only the narrative statement in Part III. *Yurt*, 758 F.3d at 858-859. The Commissioner attempts to distinguish *Yurt* by noting that the ALJ's reliance on the state agency consultant's opinion was misplaced because the consultant cited one positive GAF score but ignored several low scores. See, Doc. 27, p. 5. This myopic attempt to distinguish *Yurt* fails because it ignores the actual holding of *Yurt*.

The Commissioner also cites a nonprecedential case, *Capman v. Colvin*, 617 Fed.Appx. 575 (7th Cir. July 1, 2015). She states in her brief that her position in *Capman* and here is that "Section I of the form is merely a worksheet while Section III is the psychologist's bottom-line assessment." Doc. 27, p. 5. If is statement is meant as a suggestion that *Capman* accepted the proposition that the ALJ can ignore the Section I observations because Section I is merely a worksheet, it is incorrect. Consistent with the holdings in *Yurt* and *Varga* (which was decided about three weeks later), the Seventh Circuit held in *Capman* that "the ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet." *Capman*, 617 F. App'x at 579.

Contrary to defendant's suggestion, this case is not like *Johansen* v. *Barnhart*, 314 F.3d 283 (7th Cir. 2002) or *Capman*. In those cases, the state agency consultant set forth a narrative RFC in Section III which adequately accounted for all of his Section I observations, and the ALJ incorporated the limitations referred to in Section III into his RFC assessment. Dr. Tin did not do

so here. And, the ALJ assessed no mental limitations at all, not even the limitations referred to in Section III.

In a nutshell, under *Yurt* and *Varga*, the Section I observations are part of the medical records, and they cannot be simply ignored by the ALJ. However, *if* the psychological consultant has adequately translated his section I observations into a narrative RFC statement in Section III, the ALJ may rely on the Section III narrative RFC statement. Here, it is obvious that the narrative RFC in Section III does not adequately account for all of the Section I observations. A limitation to unskilled work or simple instructions does not account for a limitation in concentration, persistence or pace. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014); *O'Connor-Spinner*, 627 F.3d at 620, and cases cited therein. And, Dr. Tin did not address plaintiff's moderate limitation in ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances at all in his Section III narrative. Accordingly, the ALJ was not entitled to rely only on the Section III narrative and ignore the Section I observations.

Further, in addition to anxiety, Dr. Klug diagnosed dysthymic disorder and panic disorder with agoraphobia. Dr. Tin apparently accepted those diagnoses. See, Psychiatric Review Technique Form, Tr. 504-516. While the ALJ acknowledged that Dr. Klug diagnosed these additional impairments, he failed to state whether he accepted them or whether, in his view, these impairments caused any limitations. See, Tr. 25.

Under the binding precedents of *Yurt* and *Varga*, this Court must conclude

that the ALJ failed to build "an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC." *Yurt,* 758 F.3d at 858-859. Therefore, this case must be remanded.

Because remand is required on plaintiff's first point, the Court will not undertake a detailed analysis of plaintiff's other points. The Court notes, however, that the VE testified that, if plaintiff were limited to only occasional handling and fingering, all unskilled jobs at the light and sedentary levels would be precluded. (Tr. 63-64). Therefore, on remand, the ALJ should carefully consider the evidence relating to plaintiff's alleged hand impairments, keeping in mind that medical records that postdate the date last insured can be relevant to the question of whether plaintiff was disabled during the insured period. *Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012).

Lastly, the Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Smith was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Rose M. Smith's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   December 28, 2015.**

                                      <u>**s/ Clifford J. Proud**</u>
                                      **CLIFFORD J. PROUD**
                                      **UNITED STATES MAGISTRATE JUDGE**